1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ROCK VILLANUEVA, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

      v.

GIGACLOUD TECHNOLOGY INC, LARRY LEI WU, KWOK HEI DAVID LAU, XIN WAN, FRANK LIN, XING HUANG, and AEGIS CAPITAL CORP.,

        Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff Rock Villanueva ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, the investigation conducted by Plaintiff's counsel, which includes without limitation: (a) review and analysis of regulatory filings made by GigaCloud Technology Inc ("GigaCloud" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by GigaCloud; and (c) review of other publicly available information concerning GigaCloud.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired GigaCloud: (a) Class A ordinary shares pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's August 2022 initial public offering ("IPO" or the "Offering"); and/or (b) securities between August 18, 2022 and September 27, 2023, inclusive (the "Class Period"). Plaintiff pursues claims under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

1

2.     GigaCloud is a holding company which, through its subsidiaries, offers an end-to-end ecommerce platform for global trade services of heavy and large products, primarily furniture.  The Company's ecommerce platform, which it refers to as the "GigaCloud Marketplace," integrates discovery, payments and logistics tools to connect manufacturers, primarily in Asia, with resellers, primarily in the U.S., Asia and Europe, to execute cross-border transactions, then executes delivery and sale through a network of warehouses up to and including last-mile delivery to the customer.

3.     On August 19, 2022, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement.  In the IPO, the Company sold 3,381,000 Class A ordinary shares at $12.25 per share.   The Company received net proceeds of approximately $34.2 million from the IPO.  The proceeds from the IPO were purportedly to be used for general corporate purposes, including working capital, operating expenses, and capital expenditures.

4.     On September 28, 2023, before the market opened, Culper Research published a report titled "GigaCloud Technology Inc (NASDAQ:GCT): If It's Too Good To Be True..." (the "Report"), alleging "numerous glaring flaws" in GigaCloud's public reporting.   For example, the Report stated that while GigaCloud "claims to run 14 U.S. warehouses," the Company "discloses just 73 employees in the entire U.S., implying just 5 employees per warehouse."   The

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Report also alleged that "GigaCloud's marketing materials utilize photoshopped stock photos to portray itself as a highly efficient, growing operation," but that Culper Research's investigators visited some of the Company's warehouses and discovered little activity. Further, the Report alleges that Culper Research uncovered "numerous entities which are neither named subsidiaries nor disclosed as GCT related parties" whose conduct at the very least "suggests undisclosed related party issues."

5.    On this news, the Company's share price fell $1.78, or more than 18%, to close at $7.69 per share on September 28, 2023, on unusually heavy trading volume.

6.    By the commencement of this action, GigaCloud's shares have closed as low as $4.27 per share, a 65% decline from the $12.25 per share IPO price.

7.    In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (i) that the Company's business is a fraction of what it publicly claims, as evidenced by staffing and activity levels at its warehouses; (ii) that the Company overstated its last-mile operations; (iii) that the Company engaged in undisclosed related party transactions; (iv) that, as a result, the Company's financial results were overstated;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

and (v) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

this Judicial District.  In addition, the Company's principal executive offices are in

this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein,

Defendants directly and indirectly used the means and instrumentalities of

interstate commerce, including the U.S. mail, interstate telephone communications,

and the facilities of a national securities exchange.

## **PARTIES**

13.     Plaintiff, as set forth in the accompanying Certification, incorporated

by reference herein, purchased or otherwise acquired GigaCloud Class A ordinary

shares pursuant and/or traceable to the Registration Statement issued in connection

with the Company's IPO and/or GigaCloud securities during the Class Period, and

suffered damages as a result of the federal securities law violations and false and/or

misleading statements and/or material omissions alleged herein.

14.     Defendant GigaCloud is a Hong Kong-based company, incorporated

under the laws of the Cayman Islands, with its principal executive offices located

in Walnut, California.  GigaCloud's Class A ordinary shares trade on the Nasdaq

Stock Market ("NASDAQ") under the symbol "GCT".

15.     Defendant Larry Lei Wu ("Wu") was, at all relevant times, the Chief

Executive Officer ("CEO") and Chairman of the Board of Directors of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company, and signed or authorized the signing of the Company's Registration
Statement filed with the SEC.

16.    Defendant Kwok Hei David Lau ("Lau") was, at all relevant times,
the Chief Financial Officer ("CFO") of the Company and signed or authorized the
signing of the Company's Registration Statement filed with the SEC.

17.    Defendants Wu and Lau (collectively, the "Exchange Act Individual
Defendants"), because of their positions with the Company, possessed the power
and authority to control the contents of the Company's reports to the SEC, press
releases and presentations to securities analysts, money and portfolio managers and
institutional investors, *i.e.*, the market.  The Exchange Act Individual Defendants
were provided with copies of the Company's reports and press releases alleged
herein to be misleading prior to, or shortly after, their issuance and had the ability
and opportunity to prevent their issuance or cause them to be corrected.  Because
of their positions and access to material non-public information available to them,
the Exchange Act Individual Defendants knew that the adverse facts specified
herein had not been disclosed to, and were being concealed from, the public, and
that the positive representations which were being made were then materially false
and/or misleading.  The Exchange Act Individual Defendants are liable for the false
statements pleaded herein.

18.     Defendant Xin Wan ("Wan") was, at all relevant times, Chief Technology Officer ("CTO") of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.  Defendant Wan also served as the Company's Executive Director from November 2020 until August 16, 2023.

19.     Defendant Frank Lin ("Lin") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendant Xing Huang ("Huang") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.     Defendants Wu, Lau, Wan, Lin, and Huang are collectively referred to hereinafter as the "Securities Act Individual Defendants."

22.     Defendant Aegis Capital Corp. ("Aegis Capital" or "Underwriter Defendant") served as an underwriter for the Company's IPO.  In the IPO, Aegis Capital agreed to purchase 2,940,000 shares of the Company's ordinary shares, exclusive of the over-allotment option.

## SUBSTANTIVE ALLEGATIONS

### Background

23.    GigaCloud is a holding company which, through its subsidiaries, offers an end-to-end ecommerce platform for global trade services of heavy and large products, primarily furniture.  The Company's ecommerce platform, which it refers to as the "GigaCloud Marketplace," integrates discovery, payments and logistics tools to connect manufacturers, primarily in Asia, with resellers, primarily in the U.S., Asia and Europe, to execute cross-border transactions, then executes delivery and sale through a network of warehouses up to and including last-mile delivery to the customer.

**Materially False and/or Misleading Statements Issued In
The Registration Statement and Prospectus**

24.    On July 8, 2022, the Company filed a Form F-1 with the SEC which forms part of the Registration Statement.  On August 1, 2022, the Company filed a Form F-1/A, its final amendment to its F-1 Registration Statement.  The Company's Registration Statement was declared effective on August 17, 2022.

25.    On August 19, 2022, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement.  In the IPO, the Company sold 3,381,000 Class A ordinary shares at a price of $12.25 per share. The Company received net proceeds of approximately $34.2 million from the IPO.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The proceeds from the IPO were purportedly to be used for general corporate purposes, including working capital, operating expenses, and capital expenditures.

26.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

27.    Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

28.    Specifically, the Registration Statement stated that the Company had "21 warehouses in the U.S., Japan, the U.K. and Germany, totaling over four million square feet" including "three key operating centers in California, Georgia and New Jersey." The Registration Statement asserts the Company has "***the capability to reach over 90% of customers in the lower 48 states in the U.S. within an average of three days of delivery time***."[1]

29.    The Registration Statement describes these facilities as well-staffed:

We believe that ***our facilities are sufficient to meet our current needs. We intend to add new facilities or to expand our existing facilities as we add employees and expand our operations.*** We believe that

---

[1] All bold and italicized emphases herein are added unless otherwise noted.

additional space that is suitable for our needs will be available as needed to accommodate any such expansion of our operations.

30.    The Registration Statement asserts that, despite the Covid-19 pandemic, they have seen increased revenue and order activities such that "*to serve the increased orders, we have hired and are continuing to hire additional warehouse staff and sales and marketing staff*."

31.    The Registration Statement sets out that "[w]e expect to continue to procure inventories *and invest in additional warehouses and logistics infrastructure* to further expand our business" and describes how their business model is "*[u]nderpinned by a network of strategically-placed warehouses and supply chain capabilities*[.]"

32.    The Registration Statement describes the close connection between their warehousing and revenue:

> We operate warehouses in four countries across North America, Europe and Asia, with the U.S. being our largest market. *Our international activities are significant to our revenues and profits*, and we plan to further expand internationally.

33.    The Registration Statement further states that GigaCloud revenue is primarily derived from "product sales and services."

> Our revenues, which consisted of service revenue generated from GigaCloud 3P and *product revenue generated from GigaCloud 1P* and off-platform ecommerce sales, increased by 19.0% from $94.5 million in the three months ended March 31, 2021 to $112.4 million in the three months ended March 31, 2022. This increase was primarily due to continued increase in market demand for large parcel merchandise, leading to increased number of sellers who listed merchandise and

10

numbers of buyers who procured large parcel merchandise in our GigaCloud Marketplace.

34.    Specifically, GigaCloud's "1P" revenue is derived from direct product sales when "we [the Company] sell our merchandise to our customers, who are the buyers of the GigaCloud Marketplace."

35.    The Registration Statement sets this out more fully, asserting that from 2019-2021 and the three months ended March 31, 2021 and 2022:

- We generated total revenues of $122.3 million, $275.5 million, $414.2 million, $94.5 million and $112.4 million, respectively, representing 125.3% and 50.4% year-over-year growth in 2020 and 2021, respectively, and 19.0% period-over-period growth in the three months ended March 31, 2022;

- We generated gross profit of $22.2 million, $75.1 million, $89.6 million, $20.9 million and $16.9 million, respectively, representing 18.1%, 27.3%, 21.6%, 22.1% and 15.0% of total revenues, respectively;

- Our net income was $2.9 million, $37.5 million (restated), $29.3 million, $8.0 million (restated) and $4.7 million, respectively; and

- Our Adjusted EBITDA was $4.9 million, $45.5 million, $48.0 million, $10.0 million and $6.9 million, respectively.

36.    The Registration Statement asserts the Company maintains a competitive advantage because:

> **We have artificial intelligence software, or AI, that generates seller ratings and credit profiles through volume data.** Additionally, **our AI optimizes routing** by organizing incoming orders and rebalancing inventory levels within our warehousing network. Our software platform includes flexible trading tools with which sellers can set prices based on quantities, delivery dates and fulfillment methods, and buyers have the option to purchase merchandise individually or in bulk.

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37.    Finally, the Registration Statement sets out the Company's "Code of Ethics and Corporate Governance" which states, "our board of directors has adopted a set of corporate governance guidelines covering a variety of matters, including approval of related party transactions." The Registration Statement goes on to detail the "Corporate Structure" thusly:

> As of the date of this prospectus, we conduct our business operations across 13 subsidiaries and seven consolidated VIEs, among those, eight of which are our principal subsidiaries and four of which are our principal consolidated VIEs. We also have two equity incentive trusts which are treated as consolidated VIEs under U.S. GAAP.

38.    The Registration Statement was materially false and misleading and omitted to state: (i) that the Company's business is a fraction of what it publicly claims, as evidenced by staffing and activity levels at its warehouses; (ii) that the Company overstated its last-mile operations; (iii) that the Company engaged in undisclosed related party transactions; (iv) that, as a result, the Company's financial results were overstated; and (v) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Materially False and Misleading Statements Issued During the Class Period**

39.    The Class Period begins on August 18, 2022. On that day, GigaCloud's ordinary shares began publicly trading pursuant to the Registration Statement, including the statements identified in ¶¶ 28-37.

12

40.    On September 30, 2022, GigaCloud announced its unaudited financial results for the quarter and six months ended June 30, 2022 in a press release submitted to the SEC as part of a Form 6-K, Report of Foreign Issuer ("2Q22 Financial Results"). The 2Q22 Financial Results stated in relevant part:

Second Quarter 2022 Financial Highlights

- ***Total revenues were $124.0 million in the second quarter of 2022, an increase of 11.0% from $111.8 million in the second quarter of 2021.***

- Net income was $6.1 million in the second quarter of 2022, compared to $13.6 million in the second quarter of 2021.

- Adjusted EBITDA[] was $7.8 million in the second quarter of 2022, compared to $16.6 million in the second quarter of 2021

* * *

Operational Highlights

- ***GigaCloud Marketplace GMV was $458.8 million in the 12 months ended June 30, 2022, an increase of 43.8% from $319.2 million in the 12 months ended June 30, 2021.***

- Active 3P sellers were 452 in the 12 months ended June 30, 2022, an increase of 67.4% from 270 in the 12 months ended June 30, 2021.

- ***Active buyers were 4,061 in the 12 months ended June 30, 2022, an increase of 58.9% from 2,555 in the 12 months ended June 30, 2021.***

- Spend per active buyer was $112,987 in the 12 months ended June 30, 2022, a decrease of 9.5% from $124,915 in the 12 months ended June 30, 2021.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- ***3P seller GigaCloud Marketplace GMV was $196.7 million in the 12 months ended June 30, 2022, an increase of 71.1% from $114.9 million in the 12 months ended June 30, 2021***

Second Quarter 2022 Financial Results

*Revenues*

***Total revenues were $124.0 million in the second quarter of 2022, increased by 11.0% from $111.8 million in the second quarter of 2021.*** The increase was primarily due to an increase in service revenue from GigaCloud 3P and product revenue from GigaCloud 1P, partially offset by the decrease in product revenue from off-platform ecommerce.

- Service revenue from GigaCloud 3P was $32.8 million in the second quarter of 2022, increased by 39.4% from $23.6 million in the second quarter of 2021. The increase was primarily due to an increase in revenues from last-mile delivery fees and fulfillment fees for other freight services such as delivery of products via ocean transportation.

- ***Product revenue from GigaCloud 1P was $60.7 million in the second quarter of 2022, increased by 15.4% from $52.6 million in the second quarter of 2021. The increase was primarily due to an increase in number of active buyers and better selection of products catering to buyers' preference.***

- Product revenue from off-platform ecommerce was $30.5 million in the second quarter of 2022, decreased by 14.4% from $35.6 million in the second quarter of 2021. The decrease was primarily due to an overall decrease in sales on certain third-party off-platform ecommerce as consumer demand slowed down on such third-party off-platform ecommerce.

41.    On November 30, 2022, GigaCloud announced its unaudited financial results for the quarter and nine months ended September 30, 2022 in a press release

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

submitted to the SEC as part of a Form 6-K, Report of Foreign Issuer ("3Q22 Financial Results"). The 3Q22 Financial Results stated in relevant part:

*We leverage our technology and ecommerce platform to reach continuing growth in our revenue, GMV and positive operating cash flows. Our revenue grew by approximately 23% in the third quarter of 2022,* compared to the third quarter of 2021. During the third quarter of 2022, our GigaCloud 3P GMV continued to increase as a percentage of total GigaCloud Marketplace GMV, *demonstrating an increased economies of scale and user base achieved through our current marketplace model.* Coupled with our successful IPO and improvement in operating cash flows in the third quarter, our liquidity and capital resources also saw an increase, providing sufficient capital for us to pursue our business objectives. Going forward, we will continue to leverage our data driven solutions, technological capability and resources to expand and optimize our marketplace, gain market share and better serve our global customers with a stable and efficient B2B ecommerce platform.

42.     The 3Q22 Financial Results continued:

*Active buyers were 4,198 in the 12 months ended September 30, 2022,* an increase of 36.2% from 3,082 in the 12 months ended September 30, 2021.

\* \* \*

*Total revenues were $128.0 million in the third quarter of 2022, an increase of 23.4% from $103.7 million in the third quarter of 2021. The increase was primarily due to an increase in service revenue from GigaCloud 3P and product revenue from GigaCloud 1P,* partially offset by the decrease in product revenue from off-platform ecommerce.

\* \* \*

*Product revenue from GigaCloud 1P was $58.2 million in the third quarter of 2022, increased by 30.5% from $44.6 million in the third quarter of 2021. The increase was primarily due to an increase in*

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*number of active buyers and better selection of products catering to buyers' preference*.

43.    On March 17, 2023, GigaCloud announced its unaudited financial results for the quarter and fiscal year ended December 31, 2022 in a press release submitted to the SEC as part of a Form 6-K, Report of Foreign Issuer ("4Q22 Financial Results").  The 4Q22 Financial Results stated in relevant part:

**Total revenues** were $125.6 million in the fourth quarter of 2022, an increase of 20.5% from $104.2 million in the fourth quarter of 2021. **Total revenues** were $490.1 million for the full year of 2022, an increase of 18.3% from $414.2 million for the full year of 2021.

* * *

**Net income** was $12.5 million in the fourth quarter of 2022, an increase of 34.2% from $9.3 million in the fourth quarter of 2021. **Net income** was $24.0 million for the full year of 2022, a decrease of 18.1% from $29.3 million for the full year of 2021.

* * *

**Active buyers** were 4,156 in the 12 months ended December 31, 2022, an increase of 16.5% from 3,566 in the 12 months ended December 31, 2021.

44.    The 4Q22 Financial Results also stated:

Total revenues were $125.6 million in the fourth quarter of 2022, increased by 20.5% from $104.2 million in the fourth quarter of 2021. The increase was primarily due to an increase in service revenue from GigaCloud 3P and product revenue from both GigaCloud 1P and off-platform ecommerce.

- *Service revenue from GigaCloud 3P was $36.1 million in the fourth quarter of 2022, increased by 35.7% from $26.6 million in the fourth quarter of 2021. The increase was primarily due to*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*provision of third-party logistics services to certain existing and
new customers.*

45.     On April 24, 2023, GigaCloud submitted its Annual report on Form
20-F with the SEC (the "2023 20-F").  The 2023 20-F stated in relevant part:

In 2020, 2021 and 2022, ***we continued to increase the use of self-
owned and operated, cost-efficient high capacity trucks*** to replace
some, but not all, of our third-party outsourced trucks to further enhance
transportation efficiency.

46.     The 2023 20-F continued to describe the Company's revenue:

To enhance our marketplace experience, we sell our own inventory, or
1P, through the GigaCloud Marketplace and to and through third-party
ecommerce websites, such as Rakuten in Japan, Amazon and Walmart
in the U.S. and Wayfair in the U.K. ***These 1P revenues expand our
market presence, reduce inventory and logistics risk for sellers, create
more products for buyers, drive volume-based cost efficiencies for
sourcing products, provide us with proprietary data and increase the
velocity of sales on our marketplace. 1P revenues through the
GigaCloud Marketplace and to and through third-party ecommerce
websites represented 78.2%, 76.3% and 71.3% of total revenues in
2020, 2021 and 2022, respectively.*** As our GigaCloud Marketplace
continues to grow, we expect 1P revenues as a percentage of total
revenues to decline over time.

\* \* \*

We leverage ***our proprietary data and AI to accelerate the network
effects in our marketplac***e. As our marketplace grows, we accumulate
user and product data to develop analytical and predicative tools such
as product sales forecasts. This information is valuable to our sellers as
it allows them to efficiently manage inventory and pricing.

47.     The 2023 20-F also set out "Major Shareholders and Related Party
Transactions" as well as "Board Practices" on the issue of related party
transactions, which include that "if such contract or arrangement is a transaction

17

with a related party, such transaction has been approved by the audit committee."

The 2023 20-F goes on to describe the Company's Corporate Structure thusly:

> GigaCloud Technology Inc is a holding company incorporated in the Cayman Islands that does not have substantive operations and is not a direct Chinese or Hong Kong operating company. As of the date of this annual report, we conduct our business operations across 14 subsidiaries and four consolidated VIEs, among those, nine of which are our principal subsidiaries and three of which are our principal consolidated VIEs. We also have two equity incentive trusts which are treated as consolidated VIEs under U.S. GAAP.

48.    On May 24, 2023, GigaCloud announced its unaudited financial results for the quarter ended March 31, 2023 in a press release submitted to the SEC as part of a Form 6-K, Report of Foreign Issuer ("1Q23 Financial Results"). The 1Q23 Financial Results described the quarter as providing "record breaking financial and operation results through our relentless focus on execution."  The 1Q23 Financial Results reported:

- Total revenues were $127.8 million in the first quarter of 2023, an increase of 13.7% from $112.4 million in the first quarter of 2022.

- Gross profit was $29.6 million in the first quarter of 2023, an increase of 75.3% from $16.9 million in the first quarter of 2022. Gross margin increased to 23.1% in the first quarter of 2023, compared to 15.0% in the first quarter of 2022.

- Net income was $15.9 million in the first quarter of 2023, an increase of 236.4% from $4.7 million in the first quarter of 2022.

49.    The 1Q23 Financial Results represents that the Company had ***4,255 "Active buyers" in the 12 months ended March 31, 2023***, "an increase of 12.5%

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

from 3,782 in the 12 months ended March 31, 2022". The 1Q23 Financial Results represented:

> Product revenue from GigaCloud 1P was $61.4 million in the first quarter of 2023, increased by 13.2% from $54.3 million in the first quarter of 2022. The increase was primarily due to an increase in spend per active buyer.

50.    On August 15, 2023, GigaCloud announced its unaudited financial results for the quarter and six months ended June 30, 2023 in a press release submitted to the SEC as part of a Form 6-K, Report of Foreign Issuer ("2Q23 Financial Results"). The 2Q23 Financial Results stated:

- Total revenues were $153.1 million in the second quarter of 2023, an increase of 23.5% from $124.0 million in the second quarter of 2022.

- Gross profit was $40.4 million in the second quarter of 2023, an increase of 137.1% from $17.0 million in the second quarter of 2022. Gross margin increased to 26.4% in the second quarter of 2023 from 13.7% in the second quarter of 2022.

- Net income was $18.4 million in the second quarter of 2023, an increase of 201.5% from $6.1 million in the second quarter of 2022.

**Active buyers were 4,351 in the 12 months ended June 30, 2023**, an increase of 7.1% from 4,061 in the 12 months ended June 30, 2022.

51.    The 2Q23 Financial Results quoted Defendant Wu, who commented: "We are thrilled with our results for the first half of 2023, especially our tremendous period-over-period net income growth of over 200% and another consecutive quarter of generating record profitability."

52.    The 2Q23 Financial Results went on to state:

19

Total revenues were $153.1 million in the second quarter of 2023, increased by 23.5% from $124.0 million in the second quarter of 2022. The increase was primarily due to an increase in market demand for large parcel merchandise, leading to increases in our GigaCloud Marketplace GMV, sales volume and number of sellers and buyers.

Service revenue from GigaCloud 3P was $43.3 million in the second quarter of 2023, increased by 31.9% from $32.8 million in the second quarter of 2022. ***The increase was primarily due to an increase in revenue from last-mile delivery services by 69.2% from $13.5 million in the second quarter of 2022 to $22.9 million in the second quarter of 2023 and an increase in revenue from warehouse services by 62.1% from $3.3 million in the second quarter of 2022 to $5.3 million in the second quarter of 2023.*** These increases were partially offset by a decrease in revenue from ocean transportation services by 61.8% from $10.2 million in the second quarter of 2022 to $3.9 million in the second quarter of 2023, primarily due to the decrease in ocean freight costs which drove down our prices.

53.    The above statements identified in ¶¶ 39-52 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, GigaCloud and the Exchange Act Individual Defendants failed to disclose to investors: (i) that the Company's business is a fraction of what it publicly claims, as evidenced by staffing and activity levels at its warehouses; (ii) that the Company overstated its last-mile operations; (iii) that the Company engaged in undisclosed related party transactions; (iv) that, as a result, the Company's financial results were overstated; and (v) that, as a result of the foregoing, GigaCloud and the Exchange Act Individual Defendants' positive statements about the Company's business,

operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Emerges

54.    On September 28, 2023, before markets opened, Culper Research published the Report alleging that "the Company's business is a fraction of what it has claimed."   Specifically, the Report identified a number of indications that GigaCloud is grossly overstating its total market of product sourcing, warehousing and last-mile delivery.

55.    Concluding that there is a high probability that GigaCloud is overstating the effectiveness, staffing and revenue derived from its warehouses, the Report stated:

> GigaCloud claims to run 14 U.S. warehouses yet *the Company discloses just 73 employees in the entire U.S., implying just 5 employees per warehouse. Simply put, we don't think it's at all possible to profitably run 14 warehouses with over 3.7 million square feet which supposedly distribute hundreds of millions of dollars of furniture with this few people.* Comparable warehousing and fulfillment operations we reviewed typically hire hundreds if not thousands of employees at each warehouse. *Sat side by side, GigaCloud's claims imply that the Company is 10x to 100x more efficient than both furniture distribution and e-commerce peers such as Amazon, Walmart, Wayfair, and Ashley Furniture.*
>
> * * *
>
> However, *our September 2023 visits to the Company's actual warehouses revealed a much different picture: we staked out GigaCloud's 9 warehouses in its two main east coast (New Jersey) and west coast (California) regions and saw laughably sparse activity.*

21

For example, at one warehouse in New Jersey, our investigator sat for 3 hours – during weekday business hours – and saw only a single GigaCloud delivery truck. At another location in California, our investigators did see a handful of overseas shipping containers being unloaded, but the unloaded cardboard boxes then sat strewn in the loading bay for hours without being sorted.

56.     The Report compared GigaCloud's warehouse employment numbers to other companies: "[I]ndustry sources suggest that a typical warehouse or fulfillment center **employs one employee for every 1,000-1,500 square feet of warehouse space**, or 1,000 employees for every million square feet of warehouse space". Meanwhile, "[t]he **Company's Form 20-F discloses just 88 employees in operations worldwide, and just 73 in the U.S. across all departments**." The Report stated:

GigaCloud baldly claims to operate 14 distribution centers in the U.S. totaling over **3.7M million square feet using a maximum of just 73 employees**. Similarly, we believe the Company's global operational staff of just 88 is wholly insufficient to operate 21 total warehouses globally.

57.     The Report described investigating these warehouses and finding a paucity of activity. As the Report described:

As such, in September 2023, we sent investigators to each of GigaCloud's 9 warehouses concentrated in New Jersey (4 sites) and California (5 sites). **Our investigators sat at each location for 3 hours during normal business hours over the course of several business days, and found that in contrast to GigaCloud's portrayal of its operations as large and growing, the locations held sparse activity**.

58.     The Report described in detail each warehouse which was surveilled for a number of hours over a period of days and weeks, such that "the activity levels

22

we witnessed were ***nowhere near commensurate*** with the Company's reported financials."

59.    Further, the Report alleged that GigaCloud's last-mile delivery business, which GigaCloud reported to have grown to over $80 million in LTM revenue, is in fact a "meager operation" which "has just 5 vehicles registered with the Department of Transportation ('DOT')".

> GigaCloud's Department of Transportation registration information discloses that the Company's GigaCloud's logistics subsidiary (a VIE owned by Kunming Xu) ***held just 7 trucks ("power units") and 5 drivers which travelled a collective 30,000 miles in 2021***.

* * *

> While the Company has at times claimed that it also partners with third-party last-mile delivery operators, a former GCT executive told us that as of Q2 2022 (the last quarter they were at the Company), GCT used only its own trucks and drivers, stating, "Everything was their [GCT's] own employees on their own trucks."

60.    The Report goes on to describe how, even assuming GCT's last-mile claims are accurate, they fall short of the reported $80 million in revenue:

| Assuming GCT's Last-mile Claims are Accurate... | |
|---|---|
| Annual last-mile revenues (2022) | $62,745,000 |
| Monthly last-mile revenues | $5,228,750 |
| Estimated fees earned per delivery | $150 |
| Implied deliveries per month | 34,858 |
| Implied deliveries per day | 1,162 |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

\* \* \*

| Last Mile Delivery (est. as of Q2 2022) | California | New Jersey | Total |
|---|---|---|---|
| Average fees per delivery | $150 | $150 | $150 |
| Deliveries per month | 600 | 300 | 900 |
| Monthly revenues | $90,000 | $45,000 | $135,000 |
| Annual revenues | $1,080,000 | $540,000 | $1,620,000 |

61.    The Report's allegations were further bolstered by GigaCloud's own employees, including a former executive, who were interviewed for the Report:

> One former executive estimated that as of mid-2022, GCT's last mile business was completing *just 900 deliveries per month using 9 trucks*. Using GCT's own pricing sheets at an estimated $150 per delivery, *this implies annualized revenues of just $1.6 million*. A second former employee told us that by year-end 2022, *GCT was completing just 100 to 150 deliveries per day from its California base, which we estimate implies just $20 to $30 million in annualized U.S. last-mile revenues, again a fraction of GCT's reported numbers*.

62.    The Report went on to describe interviews with GigaCloud's former employees who claimed "GigaCloud lost money in last-mile, given the relative lack of scale of its distribution network and the Company's promises to deliver anywhere for a flat rate." As described in the Report:

> Former employees we spoke with also portrayed GCT's last-mile operation as *incredibly inefficient*, despite the Company's claims to the contrary. For example, a shipment might arrive from China at a GigaCloud warehouse in California, but this order requires final delivery in Michigan, requiring a cross-country trip at GigaCloud's promised flat rate. *One former employee opined, "they had to be losing money... on average, they're losing to $50 to $100 per delivery."*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

63.    The Report further alleged that GigaCloud's "supposed artificial intelligence technology" which President Iman Schrock stated managed to "transform the entire supply chain" by "continuously optimiz[ing] economies of scale" is likely highly exaggerated, if it exists at all.  As the Report stated:

> GCT itself **doesn't even disclose software development expenses or capitalized software costs** in its financial statements, and **we couldn't find a single GCT employee on LinkedIn or otherwise who claimed to have developed any AI for the Company.**

64.    The Report also alleged that investigations into GigaCloud uncovered a pattern of potential "undisclosed related party issues":

> We've also uncovered numerous entities which are **neither named subsidiaries nor disclosed as GCT related parties**, **yet which name GCT insiders including CEO Lei (Larry) Wu, GCT's former CFO Joseph Huang, and GCT employee Kunming Xu on corporate documents.** These entities appear to be engaged in the furniture trading business by way of their own separate Amazon and Walmart storefronts, their own furniture imports, and even their own warehouses. At the very least, we think the very existence of these entities suggests undisclosed related party issues, and in the worst case, might suggest more nefarious schemes.

65.    The Report goes on to detail numerous entities which "appear to be tied to GCT insiders" who engaged in a "variety of apparent related-party businesses" never disclosed.  These entities included Nixxon Digital Marketing, formed prior to GigaCloud's entry into the U.S., which listed "several GigaCloud insiders, including long-time employee Kunming Xu and former CFO Joseph Huang."  Kunming in particular is shown to have held the position of president, secretary, treasurer and director, simultaneously, from July 2013 until October

25

2018.   During that same period, Defendant Huang acted as agent before being replaced with a generic "Registered Agents Inc."

66.   The Report also described how a similar company, Nisson Trading, also "previously listed GigaCloud employee Kunming Xu as agent" before replacing him with the "generic officer, Registered Agents Inc," "adding an additional layer of opacity to the entity."

67.   The Report set out how "Nixxon and Nisson have taken **hundreds of imports** from many of the very same Chinese suppliers that GCT's *disclosed* subsidiaries – Tmall and Comptree – have imported from" as shown in here:

| | Tmall (subsidiary) | Comptree (subsidiary) | Nisson (undisclosed) | Nixxon (undisclosed) |
|---|---|---|---|---|
| Jiaxing Hifine International Enterprise | 363 | | | 454 |
| Chuangyuan Smart Home Dongguan | 118 | | | 115 |
| Leatly Industrial Development | 25 | | | 675 |
| Yangzhou Kangle Machinery | 61 | 156 | | 309 |
| Shandong Joysource Wood | 119 | | | 177 |
| Yichun Huaxiang Furniture | 2 | | | 157 |
| Idea Industrial International | | 149 | 67 | |
| Shine Wood International | | 150 | 40 | 15 |
| Ningbo Zhenhai Liduoyi Trade | 17 | | 28 | 85 |
| Linyi Tongkaiju Import & Export | 52 | | 18 | |

68.   The Report went further, stating:

**Our related party concerns span not only the import of furniture, but how furniture also appears to be being sold**. To that end, Orien Life Corp was incorporated in Nevada in December 2016. The entity is not named anywhere in GCT filings, yet once again listed GigaCloud CEO Lei Wu as President and former GCT CFO Huang as Treasurer.

26

69.    As shown in the Report, Orien Life Corp "does appear to run several furniture-oriented ecommerce storefronts, including on Amazon and Walmart" which presented additional issues as detailed in the Report:

We originally suspected that Orien might simply represent GigaCloud's own lP storefronts, but see that GigaCloud's actual named subsidiaries do instead hold their own storefronts. For example: Tmall is a disclosed GCT subsidiary and sells Merax luggage through an Amazon storefront, while Oriental Standard is also a disclosed GCT subsidiary which sells through a separate Amazon storefront. ***It's unclear to us why GigaCloud might require multiple Amazon storefronts of its own, or even if such an arrangement might flaunt Amazon's selling policies***[.]

* * *

Orien also lists an address at 2657 Windmill Parkway, Suite 393, Henderson, Nevada, which directs to a ***UPS dropbox / virtual address***. It's unclear to us why GigaCloud would need to operate through this address, were Orien to be a GCT subsidiary. Instead, this again suggests to us that it's an ***undisclosed related party***.

70.    The Report went on to discuss even more suspected related parties, including Orien Home Corp, which also directs to a virtual address at a UPS store, and which listed GigaCloud's former CFO, Defendant Huang as president, treasurer, and director before later replacing him with Shoujian Wang in November 2020.  The Report continued to list these suspected related parties:

Finally, both "Suki L INC" and "Kim Z INC" were incorporated in Colorado on the same day: March 26, 2021, and ***each list Shoujian Wang - who was also listed on Orien Home Corp's documents as of January 2021 - as representative.*** Suki LINC discloses an address in Denver, which directs to a small 10,000 sqft warehouse. Similarly, Kim Z INC lists a separate address in Commerce City, CO, which similarly

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

leads back to a small industrial park. To our knowledge, GigaCloud has not disclosed any warehouse presence in Colorado, ruling out the possibility that these two entities are in fact GCT's own undisclosed subsidiaries.

* * *

Just as we saw for Nixxon and Nisson, beginning in April 2021, Kim Z began receiving shipments from China, and has since received 79 shipments, consisting of furniture, kitchen wares, and similar products.

* * *

Similarly, beginning in May 2021 through the present, Suki L has received 188 shipments from China, consisting largely of furniture such as tables, lampshades, and drawers:

71.    The Report summarized Culper Research's findings thusly:

[W]e have uncovered what appears to be several entities which list several different GigaCloud insiders and former insiders on their documents. ***These entities have never been disclosed by GigaCloud as subsidiaries, nor have they been otherwise mentioned in GigaCloud's filings as related parties, business partners, or otherwise***. Yet they appear to be engaged in the very same business as GigaCloud, namely the import and online sales of furniture. We think this pattern deserves a full explanation by the Company.

72.    The Report concluded thatt "GigaCloud exhibits multiple hallmarks of previous "China Hustle" stocks."

73.    On this news, the Company's share price fell $1.78, or more than 18%, to close at $7.69 per share on September 28, 2023, on unusually heavy trading volume.

74.     By the commencement of this action, GigaCloud's shares have closed as low as $4.27 per share, a 65% decline from the $12.25 per share IPO price.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired GigaCloud: (a) Class A ordinary shares pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's IPO; and/or (b) securities during the Class Period; and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

76.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. The Company sold 3,381,000 Class A ordinary shares in the IPO. Moreover, record owners and other members of the Class may be identified from records maintained by GigaCloud or its transfer agent and may be notified of the

29

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

77.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

78.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

79.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether the Registration Statement, statements made by Defendants to the investing public in connection with the Company's IPO, and statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of GigaCloud; and

- to what extent the members of the Class have sustained damages and the proper measure of damages.

80.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

81. The market for GigaCloud's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, GigaCloud's securities traded at artificially inflated prices during the Class Period. On August 19, 2022, the Company's share price closed at a Class Period high of $48.01 per share.

82. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of GigaCloud's securities and market information relating to GigaCloud, and have been damaged thereby.

83. During the Class Period, the artificial inflation of GigaCloud's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about GigaCloud's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of GigaCloud and its business, operations, and prospects, thus causing the price of the Company's

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

84. At all relevant times, the market for GigaCloud's securities was an efficient market for the following reasons, among others:

- GigaCloud shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

- As a regulated issuer, GigaCloud filed periodic public reports with the SEC and/or the NASDAQ;

- GigaCloud regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

- GigaCloud was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

85. As a result of the foregoing, the market for GigaCloud's securities promptly digested current information regarding GigaCloud from all publicly available sources and reflected such information in GigaCloud's share price. Under

these circumstances, all purchasers of GigaCloud's securities during the Class Period suffered similar injury through their purchase of GigaCloud's securities at artificially inflated prices and a presumption of reliance applies.

86.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## UNDISCLOSED ADVERSE FACTS

87.    The market for GigaCloud's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, GigaCloud's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired GigaCloud's securities relying upon the integrity

of the market price of the Company's securities and market information relating to GigaCloud, and have been damaged thereby.

88.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of GigaCloud's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about GigaCloud's business, operations, and prospects as alleged herein.

89.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about GigaCloud's financial well-being and prospects.    These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.    Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other

34

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

90.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

91.     During the Class Period, Plaintiff and the Class purchased GigaCloud's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

92.     As alleged herein, GigaCloud and the Exchange Act Individual Defendants acted with scienter since they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Exchange Act Individual Defendants, by virtue of

their receipt of information reflecting the true facts regarding GigaCloud, their control over, and/or receipt and/or modification of GigaCloud's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning GigaCloud, participated in the fraudulent scheme alleged herein.

## **NO SAFE HARBOR**

93.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

forward-looking statement was authorized or approved by an executive officer of GigaCloud who knew that the statement was false when made.

## COUNT I

**(Violations of Section 11 of the Securities Act Against All Defendants)**

94.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

95.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

96.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

97.     GigaCloud is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

98.     As issuer of the shares, GigaCloud is strictly liable to Plaintiff and the Class for the misstatements and omissions.

99.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading

100.  By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

101.  Plaintiff acquired GigaCloud shares pursuant and/or traceable to the Registration Statement for the IPO.

102.  Plaintiff and the Class have sustained damages.  The value of GigaCloud Class A ordinary shares has declined substantially subsequent to and due to the Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

103.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

104.  This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

105.  The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of GigaCloud within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause GigaCloud to engage in the acts described herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

106.    The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

107.    By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## COUNT III

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against GigaCloud and the Exchange Act Individual Defendants)**

108.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

109.    During the Class Period, GigaCloud and the Exchange Act Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase GigaCloud's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, GigaCloud and the Exchange Act Individual Defendants, and each defendant, took the actions set forth herein.

110.    GigaCloud and the Exchange Act Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material

fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for GigaCloud's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. GigaCloud and the Exchange Act Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

111. GigaCloud and the Exchange Act Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about GigaCloud's financial well-being and prospects, as specified herein.

112. GigaCloud and the Exchange Act Individual Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of GigaCloud's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made

40

about GigaCloud and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

113.    Each of the Exchange Act Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Exchange Act Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

114.    GigaCloud and the Exchange Act Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing GigaCloud's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, GigaCloud and the Exchange Act Individual Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

115.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of GigaCloud's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by GigaCloud and the Exchange Act Individual

42

Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by GigaCloud and the Exchange Act Individual Defendants, but not disclosed in public statements by GigaCloud and the Exchange Act Individual Defendants during the Class Period, Plaintiff and the other members of the Class acquired GigaCloud's securities during the Class Period at artificially high prices and were damaged thereby.

116.   At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that GigaCloud was experiencing, which were not disclosed by GigaCloud and the Exchange Act Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their GigaCloud securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

117.   By virtue of the foregoing, GigaCloud and the Exchange Act Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

118.   As a direct and proximate result of GigaCloud and the Exchange Act Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT IV

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

119.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

120.   The Exchange Act Individual Defendants acted as controlling persons of GigaCloud within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Exchange Act Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Exchange Act Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly

44

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

121.    In particular, the Exchange Act Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

122.    As set forth above, GigaCloud and the Exchange Act Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of GigaCloud and the Exchange Act Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated:  October 30, 2023                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS